Sean M. Morris
Jori Quinlan
WORDEN THANE P.C.
321 W. Broadway St., Ste. 300
Missoula, MT 59802
(406) 721-3400
smorris@wordenthane.com
jquinlan@wordenthane.com

Diane Doolittle (*pro hac vice status pending*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Dr. 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
dianedoolittle@quinnemanuel.com

Bruce Van Dalsem (*pro hac vice status pending*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
brucevandalsem@quinnemanuel.com

Adam J. DiClemente (*pro hac vice status pending*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
adamdiclemente@quinnemanuel.com

*Attorneys for Defendants Michael L. Goguen; the Michael L. Goguen Trust; Whitefish Frontiers, LLC; Valley Oak, LLC; Casey's Management, LLC; Two Bear Security, LLC; Two Bear Air 1, LLC; Crystal Slopeside, LLC; and Two Bear Air Rescue Foundation*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MATTHEW MARSHALL; JOHN MAGUIRE; KEEGAN BONNET; and ANTHONY AGUILAR, Individuals, | CV-21-19-M-DWM |
| *Plaintiffs,* | |
| *v.* | |
| MICHAEL L. GOGUEN, an individual; The Trustee of the MICHAEL L. GOGUEN TRUST, a California Trust; WHITEFISH FRONTIERS, L.L.C., a Delaware limited liability company; VALLEY OAK, LLC, a Delaware limited liability company; PROOF RESEARCH, INC., a Delaware corporation; CASEY'S MANAGEMENT, LLC; TWO BEAR SECURITY, LLC; TWO BEAR AIR 1, LLC; CRYSTAL SLOPESIDE, LLC; TWO BEAR AIR RESCUE FOUNDATION, a Delaware non-profit corporation; KAREN VALLADAO, an individual; FRANK, RIMERMAN + CO. LLP, believed to be a California limited liability partnership; SHANE ERICKSON, an individual, | **BRIEF IN SUPPORT OF THE GOGUEN DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** |
| *Defendants.* | |

# TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    STATEMENT OF RELEVANT FACTS ......................................... 4

     A.     Plaintiffs ........................................................................... 4

     B.     Defendants ......................................................................... 4

     C.     The Asserted "Enterprise" ............................................... 5

     D.     The Alleged "Predicate Acts" ......................................... 5

     E.     The Claimed "Injury" ...................................................... 6

III.   Pleading Standards .................................................................... 8

     A.     Rule 12(b)(6) ...................................................................... 8

     B.     RICO: 18 U.S.C. § 1962 ................................................... 8

IV.   Argument ..................................................................................... 9

     A.     Plaintiffs Lack RICO Standing ....................................... 9

           1.     The Alleged Predicates Did Not "Lead Directly" To The Asserted Injury ............................................ 10

           2.     Plaintiff's Causation Theory Contravenes Legions Of Precedent ............................................................ 12

           3.     The Allegations Fail The "Remoteness" Test ........................... 15

     B.     The Complaint Does Not Establish An "Association-In-Fact" RICO Enterprise ................................................................. 18

           1.     Plaintiffs Fail To Allege All Defendants Share A "Common Purpose" ............................................... 19

           2.     Plaintiffs Fail To Allege The Enterprise Functions As A Continuing Unit ............................................... 20

C.    The Complaint Does Not Establish That The Entity Defendants "Conducted" The Enterprise............................................................... 23

D.    The Complaint Does Not Establish A "Pattern of Racketeering Activity"........................................................................................... 25

        1.    Plaintiffs Fail To Allege "Related And Continuous" Predicates................................................................................. 25

        2.    Plaintiffs Fail To Allege Two Predicates As To Defendant Crystal Slopeside, LLC.......................................... 27

E.    The RICO Conspiracy Claim Fails.................................................... 27

V.    Conclusion..................................................................................................... 28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anza v. Steel Supply Corp.,*
547 U.S. 451 (2006) .................................................................. 10, 13

*Ashcroft v. Iqbal,*
556 U.S. ................................................................................... 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................. 8

*Boyle v. United States,*
556 U.S. 938 (2009) ................................................................. 21

*C&M Café v. Kinetic Farm, Insc.*
2016 WL 6822071 (N.D. Cal. Nov. 18, 2016) ......................... 23

*Canyon Cty. v. Syngenta Seeds, Inc.,*
519 F.3d 969 (9th Cir. 2008) .................................................. 9, 17

*City and County of San Francisco v. Purdue Pharma, L.P., San Francisco,*
491 F. Supp. 3d 610 (N.D. Cal. 2020) ............................... 14, 15, 16

*Comm. to Protect Our Agric. Water v. Occidental Oil and Gas Corp.,*
235 F. Supp. 3d 1132 (E.D. Cal. 2017) ........................... 10, 12, 19, 21

*Daniels-Hall v. Nat'l Educ. Ass'n,*
629 F.3d 992 (9th Cir. 2010) .................................................. 22

*DeFalco v. Bernas,*
244 F.3d 286 (2d Cir. 2001) .................................................. 19

*Doan v. Singh,*
617 F. App'x 684 (9th Cir. 2015) ........................................... 19

*Gomez v. Guthy-Renker, LLC,*
2015 WL 4270042 (C.D. Cal. July 13, 2015) ......................... 23

*H.J. Inc. v. Nw. Bell Tel. Co.,*
492 U.S. 229 (1989) ................................................................. 26

*Hemi Grp., LLC v. City of New York,*
559 U.S. 1 (2010) ...................................................... 9, 10, 12, 13

*Holmes v. Sec. Investor Prot. Corp.*,
    503 U.S. 258 (1992) ................................................................. 9, 10, 15, 16

*Holscher v. Hess*,
    2019 WL 7494667 (D. Mont. Nov. 26, 2019), *R&R adopted*,
    2020 WL 85198 (D. Mont. Jan. 7, 2020) ...................................... 10, 15

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ........................................................... 28

*Johnson v. Riverside Healthcare Sys., LP*,
    534 F.3d 1116 (9th Cir. 2008) ............................................................ 8

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ............................................................ 8

*McCaul v. First Montana Bank, Inc.*,
    2018 WL 6717098 (D. Mont. Oct. 29, 2018)......................... 9, 19, 20, 21

*Nash v. Goguen*,
    Case No. 1:16-cv-07248-YGR (N.D. Cal. Jan. 9, 2017) .............. 16, 20

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007)....................................................... 21, 22

*Ogden v. Wells Fargo Bank, N.A.*,
    2015 WL 13413390 (C.D. Cal. Feb. 20, 2015)............................. 26, 27

*Or. Laborers-Emp'rs Health & Welfare Tr. Fund v. Philip Morris Inc.*,
    185 F.3d 957 (9th Cir. 1999) ........................................................... 16

*Pac. Recovery Sols. v. United Behavioral Health*,
    2020 WL 7439310 (N.D. Cal. Dec. 18, 2020) .................................. 28

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ........................................................................ 23

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
    630 F.3d 866 (9th Cir. 2010) ......................................................... 9, 18

*Shaw v. Nissan N. Am., Inc.*,
    220 F. Supp. 3d 1046 (C.D. Cal. 2016)............................................ 19

*Telford v. Montana Land Exch.*,
    2019 WL 5300200 (D. Mont. July 16, 2019)...................................... 9

*United Food & Commercial Workers Central Pennsylvania v. Amgen, Inc.*,
    400 F. Appx 255 (9th Cir. 2010) ..................................................... 13

*United States v. Persico,*
    832 F.2d 705 (2d Cir. 1987) ................................................................ 23

*United States v. Turkette,*
    452 U.S. 576 (1981) ........................................................................ 18

*United States. v. Fernandez,*
    388 F.1199, 1221 (9th Cir. 2004) ...................................................... 27

*Wodka v. Causeway Capital Management LLC,*
    433 F. App'x 563 (9th Cir. 2011) ....................................................... 13

## Rules / Statutory Authorities

18 U.S.C. §1962 ..................................................................... *passim*

Fed. R. Civ. P. 9(b) ................................................................... 1

Fed. R. Civ. P. 12(b)(6) ......................................................... 1, 3, 6, 8

Michael L. Goguen ("Goguen") and Michael L. Goguen Trust, Whitefish Frontiers, L.L.C., Valley Oak, LLC, Casey's Management, LLC, Two Bear Security, LLC, Two Bear Air 1, LLC, Crystal Slopeside, LLC, and Two Bear Air Rescue Foundation (the "Entity Defendants" and, with Goguen, "Defendants") submit the following in support of their Motion to Dismiss.[1]

## I.    PRELIMINARY STATEMENT

Civil RICO, when properly used, allows plaintiffs to serve as "law enforcemznt." Because of its potential for abuse, RICO is carefully guarded by the courts. Plaintiffs may only proceed upon a plausible theory of proximate cause in which the alleged predicate acts lead directly to the asserted injury. Likewise, plaintiffs must establish each element for each defendant, showing that each (1) conducted (2) an enterprise (3) through a pattern of (4) racketeering activity. 18 U.S.C. §1962(c). Plaintiffs Matthew Marshall, John Maguire, Keegan Bonnet, and Anthony Aguilar ("Plaintiffs") fail these requirements.[2]

---

[1] Frank Rimmerman + Co, Karen Valladao, Proof Research, Inc. and Shane Erickson move under Rule 12(b)(6) by separate motions. Following this Court's direction against redundancy (Doc. 10), Defendants here address Plaintiffs' most central failings. The Complaint is deficient in other ways, however, including those addressed by co-Defendants in their filings.

[2] Marshall alleges he "is a highly trained former Marine" who "served in various senior leadership roles for the ... State Department" and "High Threat Protection Program." Compl. ¶¶ 44-46. Marshall is under federal indictment for similar false claims, including the claim "he was a former CIA agent and a former member of an elite Force Reconnaissance Unit[.]" Case No. 20-cr-00032-DMW, Doc. 2. The Indictment further charges that Maguire received illegally-obtained funds from Marshall. *Id.* (Count VII). Goguen is a central witness in the criminal proceeding and will likely testify against Marshall. The Government, anticipating Marshall's plan to defame Goguen, moved *in limine* against prejudicial, irrelevant, allegations about Goguen, including Bryan Nash,

While styled as RICO, the Complaint (Doc. 1) reveals that Plaintiffs' principal grievance is the dissolution of start-up, security contracting firm, Amyntor Group LLC ("Amyntor"), which employed Plaintiffs. But start-ups often fail. Lacking claims under employment law, contract law, or any other means to squeeze additional money from, and disgrace, Amyntor's owner, Goguen, Plaintiffs resort to fantastical, incendiary, pleading. The 564-paragraph Complaint asserts that Goguen engaged in sordid activities (prostitution, human trafficking, adultery) and criminality to conceal them (witness tampering, money laundering, bribery, surveillance, and even murder-for-hire). But, apart from Plaintiffs' conclusory insistence this was all done by a so-called "Goguen Sexual Enterprise," the Complaint presents allegations that comprise a contrived chronology of unrelated events, disaggregated in time, place and alleged victims. It claims that Goguen: ran a "harem"; made payoffs to conceal a relationship with a Texas "dancer"; attempted murder-for-hire because of a dispute regarding an alleged underage babysitter; illegally-surveilled and threatened cancer researchers running a company in which he invested; bribed a detective with a hunting trip; threatened "cyber-attacks" against the boyfriend of an alleged "harem" member; had an affair with Las Vegas "dancer"

---

"romantic relationships," pictures of "intimate relationships," and Shane Erickson. *Id.* Doc. 37 at 3-4. This Court precluded Marshall from introducing prejudicial photographs against Goguen and reserved judgment on the remaining challenges. *Id.* Doc. 64. This lawsuit, making similar assertions as those challenged *in limine*, was filed less than two weeks later, continuing Marshall's pattern of defamatory harassment directed at the witnesses against him.

and paid her with cash and housing; procured a "StingRay" in violation of international arms control regulations to surveil alleged enemies; arranged for interstate transport of narcotics; and made false statements to the FBI. From this, the Complaint veers further into conspiracy, asserting that these activities somehow caused Amyntor's losses, and as such, entitle Plaintiffs to collect hundreds of millions of dollars. Not so.

Setting aside the abject falsity of the allegations, Plaintiffs do not (and could not) assert a viable theory of proximate cause because they do not (and cannot) claim that the predicate crimes "led directly" to the business losses complained of. Instead, Plaintiffs assert these crimes became known to the public, which damaged Goguen's reputation, which would have prevented Amyntor from obtaining security clearances, which could have prevented Amyntor from obtaining high value government contracts, which caused Goguen to cease funding, which led to the potential lost revenue and wages, along with reputational harm, claimed here as damages. Courts dismiss RICO complaints that rest on far less attenuated theories.

Furthermore, Plaintiffs fail to properly allege multiple RICO elements, including the existence of an actual "association-in-fact," that any Entity Defendant "conducted" that enterprise, or that the predicate acts constitute a "pattern of racketeering activity." There is no plausible path to liability, and Rule 12(b)(6) requires dismissal.

3

## II.   STATEMENT OF RELEVANT FACTS

### A.   Plaintiffs

Plaintiffs are former employees of Amyntor, a start-up company that would "seek contracts with corporate and government clients, including the U.S. Government." Compl. ¶¶1, 2, 22, 23, 125, 127, 135-36. Goguen was a founder and the principal investor in Amyntor. *Id.* ¶¶1, 134, 180, 185, 190, 191. Marshall joined Amyntor at its founding (*id.* ¶¶125-26), Maguire was hired in 2014 (*id.* ¶137), and Bonnet and Aguilar were "an Executive Assistant" and IT service professional, respectively (*id.* ¶¶22-23). Plaintiffs claim that, through their Amyntor ownership/employment, they were slated for future "income and wages" totaling more than $190 million (*id.* at 133-34, 564) if Amyntor achieved hoped-for success and received lucrative government contracts. Plaintiffs assert they "lost" this money and more because of the "Goguen Sexual Enterprise."

### B.   Defendants

Excluding 100 Does, Plaintiffs sue thirteen defendants.

Goguen is a former partner at a premier venture capital firm focused on cyber and network technologies (*id.* ¶48), and a long-term western Montana resident (*id.* ¶24). The Entity Defendants are duly-formed, separate corporate entities. *Id.* ¶¶25-33. Plaintiffs assert Goguen either "own[s]" these entities or finances them. *Id.* ¶231. Apart from Goguen's involvement, the Entity Defendants are not related— for example, Casey's Management is a hospitality business that owns and operates

a local restaurant, whereas Crystal Slopeside is a real-estate holding company. *Id.*
¶¶29, 35, 106.

## C.     The Asserted "Enterprise"

Plaintiffs allege the Defendants formed an "association-in-fact," which Plaintiffs—attempting embarrassment—dub the "Goguen Sexual Enterprise." *E.g., id.* ¶¶3-4. According to the Complaint, Goguen engaged in "prolific sexual misconduct" and formed the "Goguen Sexual Enterprise" to "destroy anyone who sought to expose [him.]" *Id.* Plaintiffs offer scant detail about the structure or organization of this enterprise, omitting any claim of when it was formed and speculating it "likely continues to this day." *Id.* ¶233. Plaintiffs attribute multiple purposes to the enterprise, including enabling its members to "profit[] from Goguen." *Id.* ¶ 235-37. The Complaint does not specify how the various defendants acted to "conduct" the so-called enterprise.

## D.     The Alleged "Predicate Acts"

The Complaint alleges approximately two dozen types of predicate acts. *Id.* ¶¶245-508. None of the allegations regarding these predicate acts asserts that any of the Plaintiffs was a victim of the alleged criminal conduct. *Id.* Rather, each alleged act has a non-party victim, with different allegations impacting different victims at different times and places. For example, Plaintiffs allege conduct relating

to "promotion of prostitution" with an alleged "victim" named Amber Baptiste[3] (*id.* ¶¶259-293), separate from conduct relating to alleged solicitation of murder for "victim" Bryan Nash[4] (*id.* ¶¶294-314), separate from alleged witness tampering against "victims" Lin and Larry Woods (*id.* ¶¶315-359), separate from alleged bribery of Officer Erickson relating to "victim" Pam DOE (*id.* ¶¶360-380), and separate from alleged money laundering, cyber hacking, narcotics crimes, and making false statements.

### E.  The Claimed "Injury"

Although none of the predicates are alleged to have targeted Plaintiffs, Plaintiffs seek more than $190 million in "future lost income and wages" and $40 million for "reputational harm," trebled under RICO, totaling nearly $700 million in

---

[3]  Although Rule 12(b)(6) treats the well-pleaded, non-conclusory factual allegations as true, it bears noting that Plaintiffs' allegations regarding Baptiste, when litigated by Baptiste herself in her failed lawsuit against Goguen, were found to be false and defamatory. *See* Final Statement of Decision (Jan. 24, 2020), *Baptiste v. Goguen,* No. Civ-537691 (Superior Court of California, San Mateo), *available at* https://odyportal-ext.sanmateocourt.org/Portal-External/DocumentViewer/DownloadDocumentFile/Download?d=WHaaGcz2nLJ3bkpxjDSftg2&c=-1bad54cgpw_RDobqDC-g2&l=OAnbw_NJUtNpoDqVVZ1qXw2&cn=fDYSxxdEVNy2a7w_hI_c1g2. Indeed, the court found that Goguen was the victim of Baptiste, finding her liable for "extortion and fraud," ordering her to pay Goguen more than $14 million in damages, and enjoining her from continuing to defame him with the same allegations Marshall peddles in this Complaint. *Id.*

[4]  The Complaint omits that Goguen was the victim of Nash, and not vice versa. Nash pleaded guilty in a federal indictment in this judicial district when charged with extortion and stalking, including attempting to extort millions from Goguen, and was sentenced to five years' probation by Magistrate Judge DeSoto. *United States v. Nash*, Case No. 9:19-cr-00030-KLD-1, Dkt. 13 (Indictment), Dkt. 102 (Plea hearing), Dkt. 119 (Judgment and sentence); *see also* Flathead Beacon, *Man Who Admitted Blackmailing Whitefish Philanthropist Sentenced to Five Years Probation*, Aug. 25, 2020, *available at* https://flatheadbeacon.com/2020/08/25/man-admitted-blackmailing-whitefish-philanthropist-sentenced-five-years-probation/.

alleged damages. *Id.* at 133-34. Plaintiffs assert that in light of the existence of the
"Goguen Sexual Enterprise," a government agency would "*likely* conclude that
Goguen may be susceptible to exploitation, coercion, or duress," and a separate
agency would "*likely* reject Goguen's [clearance] application," which, in turn, would
have "*jeopardiz[ed]*" Amyntor's chances of obtaining the clearances required to
obtain government contracts, which caused Goguen to stop funding Amyntor, which
meant that the plaintiffs would not earn the hundreds of millions of dollars they
supposedly expected. *Id.* ¶¶192-96 (emphases added).

Plaintiffs allege they "received information" that the government was seeking
"defense contractors to provide intelligence services to the CIA" (*id.* ¶157), and the
Director of the CIA "wrote a handwritten note authorizing ... budget numbers" for
a potential contract with Amyntor (*id.* ¶ 161). Accordingly, Amyntor allegedly "was
*preparing to apply* for a [clearance] from the U.S. Defense Security Services" so
that Amyntor "*could begin bidding* on Secret and Top Secret" contracts. *Id.* ¶¶178-
79 (emphases added). Plaintiffs claim Marshall was "informed that because of
Goguen's ownership" and the "Goguen Sexual Enterprise's" activities, it "was
highly *unlikely*" that Amyntor would receive such a clearance. *Id.* ¶180 (emphasis
added). Upon learning that Amyntor would be "unlikely" to obtain clearance while
associated with Goguen, the Complaint alleges that Plaintiffs informed Goguen of
this, who, in turn, "pull[ed] out of Amyntor" as an investor and dissolved it. *Id.*

¶196. Plaintiffs claim that "they would not have been injured" if "members of the Goguen Sexual Enterprise had not been complicit" in the various predicate acts, and that "Goguen should have foreseen that the Goguen Sexual Enterprise would compromise his ability to obtain a security clearance, *and by extension*, Amyntor's and Plaintiffs' ability to grow from the security contracts." *Id.* ¶¶529-30 (emphasis added); *see also id.* ¶¶537-54.

## III.   PLEADING STANDARDS

### A.   Rule 12(b)(6)

Rule 12(b)(6) dismissal is proper upon a "lack of a cognizable legal theory" or "[in]sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts need not "accept as true a legal conclusion couched as a factual allegation," *id.*, because plaintiffs "may not simply recite the elements of a cause of action…." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). "[A]llegations must be enough to raise a right to relief above the speculative level" and show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### B.   RICO: 18 U.S.C. § 1962

RICO requires showing "(1) conduct (2) of an enterprise (3) through a pattern

(4) of racketeering activity[]' that damaged the plaintiff's business or property."

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010);

*McCaul v. First Montana Bank, Inc.*, 2018 WL 6717098, *3 (D. Mont. Oct. 29,

2018) (recommending dismissal of RICO claim). To survive, "[t]he factual

allegations must plausibly support ***each element***" and "must establish that ***each***

***defendant personally*** conducted, or participated in the conduct of the enterprise."

*McCaul*, 2018 WL 6717098, *3 (emphasis added); *accord Telford v. Montana Land*

*Exch.*, 2019 WL 5300200, *3, 5 (D. Mont. July 16, 2019) (same, recommending

dismissal of RICO claim). Plaintiffs fail to adequately allege multiple essential

elements. The law concerning the challenged elements is presented as applicable

below.

## IV.   ARGUMENT

### A.   Plaintiffs Lack RICO Standing

A "plaintiff must show that [the] harm was 'by reason of' the RICO violation,

which requires the plaintiff to establish proximate causation." *Canyon Cty. v.*

*Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing *Holmes v. Sec.*

*Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). Proximate cause turns on the

connection between the predicate acts and the asserted injury: "[A] plaintiff must

show that a predicate offense 'not only was a 'but for' cause of his injury, but was

the proximate cause as well.' " *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 2

(2010). Thus, courts have dismissed claims where plaintiffs "had not alleged facts showing that the Defendants' racketeering activity [i.e., predicate acts] was the cause of [their] injuries." *Holscher v. Hess*, 2019 WL 7494667, *5 (D. Mont. Nov. 26, 2019), *R&R adopted*, 2020 WL 85198 (D. Mont. Jan. 7, 2020). RICO requires a "***direct relation*** between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268 (emphasis added). Thus, "the central question ... is whether the alleged violation led directly to the plaintiff's injuries." *Holscher*, 2019 WL 7494667, *5 (quoting *Anza v. Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).

The standard is not met where "[m]ultiple steps . . . separate the alleged fraud from the asserted injury," *Hemi*, 559 U.S. at 15, because "the general tendency of the law ... is not to go beyond the first step" of causation, *id.* at 10. Put simply: "[R]eliance 'on an attenuated chain of conjecture' is insufficient to support proximate causation...." *Comm. to Protect Our Agric. Water v. Occidental Oil and Gas Corp.*, 235 F. Supp. 3d 1132, 1169 (E.D. Cal. 2017).

## 1. The Alleged Predicates Did Not "Lead Directly" To The Asserted Injury

Plaintiffs' asserted injury is many steps from the alleged fraudulent conduct and thus fails to come close to satisfying the standard for RICO causation. Plaintiffs assert the following sequence of events that allegedly caused them millions in harm:

1. Goguen engaged in illicit sexual activities;

2. Goguen sought to avoid public exposure of the activity and organized

10

himself, independent entities, accountants, and a detective into the "Goguen Sexual Enterprise" (Compl. ¶¶3, 228-234, 235(C)-(D));

3. This enterprise engaged in criminal predicate acts, including soliciting prostitution and murder-for-hire, money laundering, narcotics crime, bribery, witness intimidation, and cybercrime against persons who are *not* any of the Plaintiffs (*id.* ¶¶245-508);

4. Public reports concerning these predicate acts exposed Goguen to reputational damage (*id.* ¶¶186-192);

5. Because Goguen was an investor-owner in Amyntor, his personal reputational damage was attributed to Amyntor (*id.* ¶¶180, 191);

6. This reputational damage would likely cause the United States Government to decline clearances in the event Amyntor applied for one—though the Complaint neither alleges that Amyntor actually did so, nor that one was denied (*id.* ¶¶186-192);

7. The potential inability to obtain clearance would likely have prohibited Amyntor from receiving government contracts requiring clearance—though the Complaint neither alleges that Amyntor actually bid on any contracts, nor that any contract was actually denied (*id.* ¶¶178-179, 186-192);

8. Amyntor would have made more money if it had applied for and obtained clearances, and bid on or received unspecified contracts (*id.* ¶¶529-533, 537-538);

9. After Marshall told Goguen that Amyntor likely could not obtain clearances, Goguen stopped funding Amyntor, causing the company to dissolve and cease operations (*id.* ¶¶186, 196);

10. This corporate dissolution prevented Plaintiffs from obtaining anticipated profits and salaries from Amyntor and caused Plaintiffs to suffer "reputational harm" (*id.* ¶¶529-542, Statement of Damages).

This chain of alleged events fails the "direct relation" rule. Rather, Plaintiffs' theory has "[m]ultiple steps" (10 of which are described above) which "separate the

alleged fraud from the asserted injury." *Hemi*, 559 U.S. at 15. Even the injury alleged by Plaintiffs takes the form of (highly speculative) losses of compensation and reputation following Amyntor's dissolution. The significant number of links needed to connect such losses to the predicate acts—none of which are alleged to have been directed at Plaintiffs or even Amyntor—shows that Plaintiffs are improperly reliant "on an attenuated chain of conjecture," *Comm. to Protect Our Agric. Water*, 235 F. Supp. 3d at 1169, and lack standing.

## 2. Plaintiff's Causation Theory Contravenes Legions Of Precedent

Attenuated claims of harm lacking the requisite direct relationship between the alleged predicate acts and injury, as Plaintiffs have alleged in their Complaint, contravene legions of precedent and fail as a matter of law.

Among other reasons, independent third-party-decisions break proximate causation for RICO standing. The Supreme Court's *Hemi* decision rejected causation as "anything but straightforward," where the "theory of liability rest[ed] on the independent actions of third and even fourth parties." 559 U.S. at 15. There, New York City alleged that tobacco-company Hemi failed to file "Jenkins Act" customer reports with the State, causing the City to lose revenue because it could not determine which customers failed to pay taxes. But "the conduct directly responsible for the City's harm was the customers' failure to pay their taxes," *id.* at 11, whereas the alleged predicate act (fraud) was "Hemi's failure to file Jenkins Act

reports," *id.* Proximate cause failed because "the compensable injury flowing from a [RICO] violation . . . 'necessarily is the harm *caused by [the] predicate acts*,'" *id.* (quoting *Anza*, 547 U.S. at 457) (emphasis added), and the City's claimed injury followed the independent failure of customers to pay tax. Similarly here, the claimed injury follows from Amyntor's dissolution, whereas the harm allegedly caused by the predicate act allegations was to the direct "victims" of the alleged crimes, not the Plaintiffs.

The Ninth Circuit has dismissed RICO claims for want of proximate cause on similar bases. In *United Food & Commercial Workers Central Pennsylvania v. Amgen, Inc.*, 400 F. Appx 255, 257 (9th Cir. 2010), the chain of causation included three independent decisions—"Medicare's decision to cover" a pharmaceutical, "third-party payors' decision to cover" that pharmaceutical for particular uses, and "doctors' decisions to prescribe" it for those uses. In *Wodka v. Causeway Capital Management LLC,* 433 F. App'x 563, 564 (9ᵗʰ Cir. 2011), the claimed injury was decreased share value in the defendant company. The court found such injury was "directly caused by a series of intervening actions undertaken by independent, third party actors," including "law enforcement actions" and "various decisions made by investors to sell off their shares" of stock, and was not "the direct result of the defendant's' ownership and financing of illegal gambling operations[.]" Here, the intervening security clearance- and contract-issuance decisions by independent

13

government agencies, even had they occurred as Plaintiffs suggest they would have, likewise disrupt proximate cause.

Recent decisions in Ninth Circuit District Courts follow suit. In *City and County of San Francisco v. Purdue Pharma, L.P.,* San Francisco sued an opioid manufacturer alleging that false marketing claims constituted fraud which resulted in drug users unlawfully disposing of needles on municipal property, causing damages. 491 F. Supp. 3d 610 (N.D. Cal. 2020). The court dismissed the RICO claims because, even if defendant's "conduct enabled this third party behavior, it is impossible to conclude that the Defendants' conduct directly caused the [harm]." *Id.* at 657. The court observed that "[n]either the Ninth Circuit nor the Supreme Court have ever accepted a RICO proximate cause theory that involves three intermediaries" and found the "relationship here between the Defendants' conduct and the City's harm extends well beyond the first step[,]" connecting false marketing regarding opioids to the City's costs in cleaning its public spaces. *Id.* Here, Plaintiffs' theory likewise requires independent acts by multiple intermediaries to connect the predicates to their alleged wage and reputational "losses"—at the least, an independent government agency would decide whether to issue security clearances, and, subsequently, different government entities would decide whether to solicit bids on contracts and whether to award a contract to a particular bidder. Compl. ¶¶158-161, 177-180.

The dismissal order in *Holscher*—decided in this judicial district—corroborates the foregoing. There, plaintiff asserted the defendants illegally entered her storage unit and tampered with inventory, causing financial harm. However, because the asserted predicate act was mail fraud, the court concluded that the "damages are attributable to the [d]efendant's conduct in tampering with her ... inventory rather than the predicate act of mail fraud," and, thus, that the plaintiff could not show the predicate act "led directly to her claimed damages." 2019 WL 7494667, at *5. Here, the asserted predicates are even further removed—Plaintiffs do not allege Defendants inflicted direct harm (akin to tampering with property), but rest their entire theory on potential harm following potential decisions of independent government actors.

### 3. The Allegations Fail The "Remoteness" Test

In addition to the "direct relation" standard, "courts typically consider the *Holmes* factors . . . that help determine whether an injury is too remote to permit recovery." *City & Cnty. of San Francisco*, 491 F. Supp. 3d at 655-656. They are "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries."

*Id.* at 656. Even "one factor alone can be dispositive." *Id.* (citing *Or. Laborers-Emp'rs Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999)). Plaintiffs fail to satisfy all three.

As to the first factor, the direct "victims" of the alleged crimes named in the Complaint could themselves sue to "vindicate the law." Indeed, several of them have.[5] If the alleged predicates were grounded in fact, the purported victims could file actions to "remedy the harm done[.]" *Or. Laborers-Emp'rs*, 185 F.3d at 964. Suits by actual victims, and not, as here, third parties seeking to profit from the victims' alleged harm by procuring RICO damages for themselves, would promote "the general interest in deterring injurious conduct … the objective of this factor." *Id.* (citing *Holmes*).

On the second factor, Plaintiffs' attenuated theory, involving multiple participants, including speculation regarding the actions of multiple third-party actors regarding unspecified, theoretical contracts, would render assessment/apportionment of damages a quagmire. Multiple government agencies tasked with discretionary national security functions are inextricably involved in Plaintiffs' theory. Loss of hypothetical future contracts, the existence and terms of

---

[5] As noted above (*supra* note 3), Baptiste sued Goguen directly making many of the same allegations appearing in the Complaint; the court dismissed her suit and entered judgment against her for extortion and fraud. Nash too sued Goguen directly, though voluntarily dismissed his lawsuit shortly thereafter in the face of pending motions to strike and dismiss. *See* Doc. 31 *Nash v. Goguen*, Case No. 1:16-cv-07248-YGR (N.D. Cal. Jan. 9, 2017) (Order for Dismissal).

which are only based upon rank speculation, also make a damages assessment impossible. Furthermore, it is equally speculative to assume that contracts would be lost because of Goguen's (a passive investor) conduct, and not because of Marshall's (Amyntor's CEO) conduct, when Marshall is alleged to have falsified his resume and committed fraud over years.[6] From this, determining the "damages attributable to [Defendants'] wrongful conduct," as opposed to "numerous alternative causes that might be the actual source," would be nearly impossible. *Canyon Cty.*, 519 F.3d at 983. This Court need not speculate as to the existence of alternate causes because the Complaint itself identifies a damaging Buzzfeed News article that Plaintiffs admit created significant hardship for Amyntor not long before its dissolution. Compl. ¶¶162-166, 175.

The third factor also cuts against Plaintiffs. By relying on predicates directed at others, who could sue separately on their own accord, Plaintiffs create a quintessential opportunity for multiple suits regarding the same occurrences.

\* \* \*

Plaintiffs fail to meet the "direct relation" standard and are precluded from pressing RICO claims. Plaintiffs cannot plausibly connect the dozens of predicate acts (charges of sexual impropriety and criminal cover-ups) to their claimed injury (losses after Amnytor's dissolution). The lack of proximate cause is also clear from

---

[6] *See* Indictment, Case No. 20-cr-00032-DMW, Doc. 2.

what the Complaint cannot (and does not) allege: that Amyntor was assured any financial success. There is no guarantee that any company, particularly a start-up, will receive clearances or high-value contracts and, indeed, the Complaint omits that clearance was actually applied for (or denied), that Amyntor actually bid on a particular contract (or lost it for any stated reason), or that any particular contract existed. It is equally plausible that Amyntor would have failed in bidding because of its pedigree, short track-record, or Plaintiffs' own shortcomings as salespersons. Not only do Plaintiffs' alleged damages layer speculation upon speculation, Plaintiffs are far afield of any injury "by reason of" racketeering activity, 18 U.S.C. 1962(c), and the Complaint should be dismissed for lack of standing.

## B. The Complaint Does Not Establish An "Association-In-Fact" RICO Enterprise

A plaintiff must plead the existence of an "enterprise." *Rezner*, 630 F.3d at 873. Notwithstanding naming a dozen corporate entities, Plaintiffs do not assert that the "Goguen Sexual Enterprise" was an actual organization, but that it is an "association-in-fact." Compl. ¶129. To proceed in this manner, plaintiffs must plausibly plead that "a group of persons associated together for *a common purpose* of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). In addition, plaintiffs must show "that the group is an 'ongoing organization, formal or informal,' and that 'the various associates function *as a continuing unit*.'" *McCaul*, 2018 WL 6717098, at *4 (emphasis added). They

must meet each element as to each defendant. *Id.* at \*3; *accord Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1053 (C.D. Cal. 2016) (plaintiff must allege "the role of each defendant in each scheme"); *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The requirements of section 1962(c) must be established as to each individual defendant.").

### 1. Plaintiffs Fail To Allege All Defendants Share A "Common Purpose"

To plead common purpose, "[t]he facts must demonstrate ***all the participants acted with the same purpose in mind*** pursuant to a unified agenda." *McCaul* at \*4 (quoting *Comm. to Protect Our Agric. Water*, 235 F. Supp. 3d at 1175) (emphasis added). Plaintiffs may not "allege only a series of disconnected incidents, each involving only a subset of the overall group of defendants, with no clear indication of a unified agenda," but must show "that all the named defendants acted with the same purpose." *Comm. to Protect Our Agric. Water*, 235 F. Supp. 3d at 1175; *accord Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015) (affirming dismissal). The Complaint fails to meet the "common purpose" test for multiple reasons.

First, the Complaint does not allege that all Defendants share the same purpose in conducting the "Goguen Sexual Enterprise." Plaintiffs openly eschew a single purpose and claim the participants shared "one or more of the following purposes," delineating five separate options for the thirteen defendants. Compl. ¶¶235(A)-(E). Nothing in the Complaint indicates which Defendants, if any, shared

which of the five alleged purposes with any others. Plaintiffs' enterprise assertion fails on this basis alone.

Second, the common purpose element is absent for the fundamental reason that it is impossible for Goguen to share any of the alleged common purposes with the other Defendants. The Complaint claims the common purpose of "associating with Michael L. Goguen *in order to profit from his businesses* . . . ." Compl. ¶235(A) (emphasis added). That this is the primary "common purpose" allegation is proved by the further statements that Defendants "participated in the [enterprise] *to fulfill the common purpose of profitability from Goguen*" (*id.* ¶236), and worked to conceal misconduct "so that they could *continue to benefit from their lucrative collaborations with Goguen*" (*id.* ¶237) (emphases added). Thus, the Complaint is self-defeating on the common purpose requirement: The allegation is that Defendants sought financial benefit *from* Goguen, and it is implausible (indeed, impossible) for Goguen himself to have that same purpose. *See McCaul* at *5 (dismissing where "allegations that [two defendants] engaged in conduct representing [the enterprise's] interests, not a common interest or purpose that all four [defendants] shared").

### 2. Plaintiffs Fail To Allege The Enterprise Functions As A Continuing Unit

The "continuing unit" requirement for an association-in-fact enterprise "relates to the duration of the racketeering activities as RICO is not intended to

address discrete instances of fraud or criminal conduct." *McCaul* at *6 (quotations omitted). A complaint must allege facts showing "longevity sufficient to permit" the persons allegedly in control "to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Allegations must establish that behavior constitutes "ongoing rather than isolated activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). In *Committee to Protect Our Agricultural Water*, the court dismissed RICO claims where plaintiffs "merely allege[d] without any elaboration that defendants engaged in a 'continuing and related pattern of racketeering activity.'" 235 F. Supp. 3d at 1175.

Here, the Complaint fails to allege facts plausibly establishing that the so-called Goguen Sexual Enterprise functioned as a "continuing unit." Section A of the Complaint (¶¶228-234) purports to explain the "association" at the heart of Plaintiffs' case, but none of those paragraphs indicate when the enterprise commenced. The remaining allegations do not provide support for a "continuing unit" finding. Rather, like the dismissed complaint in *Committee to Protect Our Agricultural Water*, Plaintiffs "[do] not plead facts showing that defendants acted jointly over a period of time," but "alleg[e] only isolated incidents each involving some but not all of the named defendants." 235 F. Supp. 3d at 1176. Indeed, only two of the Defendants—Goguen and the Goguen Trust—are repeatedly alleged to have acted jointly in the bulk of the predicate activity alleged in the Complaint, with

the remaining Entity Defendants appearing only sporadically in the predicate act allegations. See Compl. ¶¶245-508.[7] These allegations are insufficient to show such "ongoing rather than isolated activity" necessary for an "association-in-fact" enterprise. *Odom,* 486 F.3d at 553.

Potentially recognizing this core deficiency, Plaintiffs inserted two paragraphs (out of 564) parroting "continuing unit" language. Paragraph 520 states: "Defendants and their co-conspirators functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes." Compl. ¶520. This conclusory allegation does not suffice. Likewise, *the* assertion in Paragraph 233 that the enterprise "likely continues to this day" (*id.* ¶233) is not based on anything other than speculation that the enterprise existed before and after Plaintiffs' personal associations with Goguen. That, even if true, does not support a conclusion regarding the temporal existence of the "Goguen Sexual Enterprise," and this Court is not required to accept allegations requiring "unwarranted deductions of fact, or unreasonable inferences." *Daniels–Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).

Plaintiffs have not established the existence of an association-in-fact enterprise. There are no plausible allegations before this Court suggesting that the

---

[7] The failure to meet the "continuing unit" requirement with respect to these defendants is not only grounds to dismiss as to them, but requires dismissal of the Complaint for lack of an adequately defined RICO enterprise.

so-called "Goguen Sexual Enterprise" is anything other than a rhetorical construction in the Complaint intended to create scandal.

## C. The Complaint Does Not Establish That The Entity Defendants "Conducted" The Enterprise

RICO liability attaches only to "those who participate in the operation or management of an enterprise through a pattern of racketeering activity." *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993). The statute requires that a defendant engaged in the "*conduct* of an enterprise through a pattern of racketeering activity." 18. U.S.C. § 1962(c) (emphasis added). This element must be established as to each defendant because the focus "is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise." *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) *cert. denied*, 486 U.S. 1022 (1988). The term "conduct" means "*more than mere participation* in the enterprise's affairs." *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *4 (C.D. Cal. July 13, 2015) (emphasis added). That is because "conduct" only occurs when a defendant "ha[d] some part in *directing* [the enterprise's] affairs." *Reves*, 507 U.S. at 179 (emphasis added). Allegations that "an individual is affiliated with a RICO enterprise, on its own, [are] not sufficient" to meet this requirement. *C&M Café v. Kinetic Farm, Insc.* 2016 WL 6822071, at *5 (N.D. Cal. Nov. 18, 2016) ("[M]ere association with an enterprise is not sufficient, but rather, the individual must have participated in some element of direction").

Plaintiffs do not allege facts sufficient to establish that any Entity Defendant conducted—directed—the enterprise. Setting aside conclusory allegations reciting the "conduct" element as fact (Compl. ¶¶228, 527, 548), the Complaint does not contend that the Entity Defendants directed any racketeering activity, but, in contrast, that they were directed and used by others.

**Whitefish Frontiers & Valley Oak**: These defendants allegedly participated in isolated predicate acts (*Id.* ¶¶258, 270, 293, 379, 380, 499, 555), and Plaintiffs assert they "agreed to facilitate the Goguen Sexual Enterprise by assisting in the interstate transportation of young women…." *Id.* ¶555. At most, this "facilitation" claim alleges participation without indicia of direction or control. **Casey's Management**: Plaintiffs charge that Casey's was "*used* to lure women to participate" in the enterprise by having a room in the basement. *Id.* ¶514 (emphasis added). That passive role cannot constitute "direction." The remaining allegations impermissibly assert "mere participation" in individual predicate acts only. *Id.* ¶¶244, 257, 554.[8] **Two Bear Security, Two Bear Air I, and Two Bear Air Rescue**: Beyond alleged participation in isolated predicates (*Id.* ¶¶358, 359, 404, 492, 493), the Complaint alleges these entities were tools for the enterprise, and not that they

---

[8] Paragraph 241 charges "Casey's Management LLC participants … allowed the Goguen Sexual Enterprise" to grow by "procuring narcotics and young women" for "illicit sexual behavior" allegedly to occur at the bar. It is unclear whether Plaintiffs assert the "participants'" conduct is attributable to Casey's Management, LLC in its corporate form. Nonetheless, this facially asserts participation, not direction or control.

exercised control over it. *See id.* ¶226 (alleging Goguen "expected Marshall to use Two Bear['s] resources" to further and conceal the enterprise); ¶556 (alleging action "at the direction of Goguen"); ¶485 (alleging Goguen "directed the head of Defendant Two Bear Air Rescue" to obtain a StingRay); ¶¶488-91 (alleging participation by use of the StingRay). *Crystal Slopeside:* The Complaint alleges this entity owns condominiums used for illicit activity "in furtherance of the Goguen Sexual Enterprise." *Id.* ¶¶ 35, 463, 557. Nothing alleged indicates it had any role other than passive use by others—that is, not direction or control. *Goguen Trust:* Like the other Entity Defendants, the Complaint's references to the Trust establish, at most, that it took direction from or was used by others. *E.g.*, ¶116 (alleging defendants "cut checks from the Goguen Trust"); ¶ 229(v) (alleging the "Trusts" are entities "from which some payments in respect of the Goguen Sexual Enterprise were made"); ¶550 (acknowledging "Goguen" is the party "who often made payments as the Trustee of the [Goguen] Trust").

Accordingly, the Complaint should be dismissed for the additional reason that Plaintiffs fail to allege that Entity Defendants (or the others) conducted the enterprise's affairs.

### D. The Complaint Does Not Establish A "Pattern of Racketeering Activity"

#### 1. Plaintiffs Fail To Allege "Related And Continuous" Predicates

RICO prescribes a "pattern of racketeering activity," 18 U.S.C. § 1962(c), which requires proof of a combination of "related" and "continuous" predicate acts. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). Predicates are "related" when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. A "pattern is not formed by 'sporadic activity'" and a person cannot be subject to liability "for committing two widely separated and isolated criminal offenses." *Id.* at 239. The fact that one individual—even a defendant—is involved in the predicate acts does not itself render the predicates a "pattern." *See Ogden v. Wells Fargo Bank, N.A.*, 2015 WL 13413390, at *2–3 (C.D. Cal. Feb. 20, 2015) (finding the "purpose of each action was different and involved largely different actors" notwithstanding that the same party (Kwok) was involved in the "variety of predicate acts").

Here, Plaintiffs' mass assemblage of predicates does not meet the "related" standard. To be sure, Plaintiffs claim Goguen caused the enterprise to undertake activity in furtherance of his self-interest but, aside from allegations that the predicates were in furtherance of illicit activity, or its obfuscation, the "results, participants, victims" and "methods" are distinct. Indeed, the Complaint lays out a disparate series of events against unrelated victims, by different perpetrators, in separate and distinct sections of the pleading. *E.g.* ¶¶259-293 (allegations about

Baptiste, a dancer from "a strip club in Texas"); ¶¶315-359 (allegations about Lin and Larry Woods, cancer researchers who received a business grant from Goguen); ¶¶421-442 (allegations about Mark and Emily Doe, a pair from New York City allegedly threatening to expose the Goguen Sexual Enterprise (Mark Doe) while allegedly engaging in prostitution (Emily Doe)); ¶¶482-493 (allegations about the StingRay device allegedly obtained by Mr. Goguen for illegal surveillance in Montana)). Courts regularly dismiss RICO complaints that allege such isolated and sporadic activity. *E.g. Ogden*, 2015 WL 13413390, at *2-3.

### 2. Plaintiffs Fail To Allege Two Predicates As To Defendant Crystal Slopeside, LLC

Under RICO, a plaintiff must allege the defendant engaged in a "pattern of racketeering activity," which "requires at least two predicate acts." *United States. v. Fernandez*, 388 F.1199, 1221 (9th Cir. 2004). Plaintiffs plead *no* predicate acts regarding Crystal Slopeside. *See* Compl. ¶¶ 245-508. The Complaint must be dismissed against this Defendant.

### E. The RICO Conspiracy Claim Fails

Plaintiffs' claim for RICO conspiracy under Section 1962(d) fails because "[p]laintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Pac. Recovery Sols. v. United Behavioral Health*, 2020 WL 7439310, at *7 (N.D. Cal. Dec. 18, 2020) (dismissing with prejudice).

## V.  __CONCLUSION__

Plaintiffs respectfully request that the Court grant the Motion and, because any amendments would be futile, dismiss with prejudice.

Respectfully submitted,

Date: June 30, 2021

*Attorneys for Defendants Michael L. Goguen; the Michael L. Goguen Trust; Whitefish Frontiers, LLC; Valley Oak, LLC; Casey's Management, LLC; Two Bear Security, LLC; Two Bear Air 1, LLC; Crystal Slopeside, LLC; and Two Bear Air Rescue Foundation*

QUINN EMANUEL URQUHART & SULLIVAN, LLP *(pro hac vice status pending)*

Diane Doolittle
Bruce Van Dalsem
Adam J. DiClemente

WORDEN THANE P.C.

Sean Morris
Jori Quinlan

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of June 2021, I served a copy of the preceding document via CM/ECF on:

Adam H. Owens, Esq.
Gregory G. Costanza, Esq.
GRANITE PEAK LAW, PLLC
201 W. Madison Ave., Ste. 450
Belgrade, MT 59714
(406) 586-0576
adam@granitepeaklaw.com
gregory@granitepeaklaw.com

*Attorneys for Plaintiff*