Bruce A. Fredrickson
Angela M. LeDuc
Rocky Mountain Law Partners, P.C.
1830 3rd Avenue East, Suite 301
P. O. Box 1758
Kalispell, MT 59903-1758
Telephone:(406) 314-6011
Facsimile: (406) 314-6012
E-mail:     bruce@rmtlawp.com
            angie@rmtlawp.com
*Attorneys for Nic McKinley*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| MATTHEW MARSHALL; JOHN MAGUIRE; KEEGAN BONNET; and ANTHONY AGUILAR, Individuals; and MATTHEW MARSHALL Derivatively on Behalf of AMYNTOR GROUP, LLC,<br><br>     Plaintiffs,<br><br>     vs.<br><br>MICHAEL L. GOGUEN, an individual; The Trustee of the MICHAEL L. GOGUEN TRUST, a California Trust; WHITEFISH FRONTIERS, L.L.C., a Delaware limited liability company; PROOF RESEARCH, INC., a Delaware corporation; KAREN VALLADAO, an individual; FRANK, RIMERMAN + CO. LLP, believed to be a California limited liability partnership; SHANE ERICKSON, an individual; SHAWN LEWIS, an individual; NIC | 9:21-CV-00019-DWM<br><br><br><br><br><br>**DEFENDANT, NIC McKINLEY'S MOTION TO DISMISS F.R.Civ.P., 12(b)(6)** |

McKINLEY, an individual; RICHARD
HEGGER, an individual; AMYNTOR
GROUP LLC, a nominal Defendant;
and DOES 1 through 100,

     Defendants.

# Table of Contents

1. Preface. ...................................................................................................6

2. Plaintiffs' FAC Does Not Comply with Rule 8, F.R.Civ.P.................................7

3. Amyntor's Derivative Claim Two Should Be Dismissed
   Under Rule 12(b)(6) Standards ............................................................7

A. Amyntor's Derivative Claim Two is a Not-So-Veiled
   Attempt to Improperly Disguise a State Law
   Claim as a RICO Claim Under 18 U.S.C. § 1962(b). ........................8

B. Plaintiffs' FAC, Generally, and Amyntor's Derivative Claim
   Two Specifically, are Replete with Conclusory, Speculative
   Allegations and Accordingly Do Not State Claims that are
   "Plausible on Their Face."..................................................................10

C. Amyntor's Derivative Claim Two Does Not Meet the Substantive
   Allegations Required Under 18 U.S.C. § 1962(b) to State a
   Cognizable Claim Against McKinley. ..............................................12

i. McKinley's Actions Are Not Expressly Pleaded as "Predicate Acts"
   And Even If Assumed to be Alleged "Predicate Acts" They Are Not
   Pleaded With Sufficient Particularity.................................................13

ii. Claim Two Fails to Allege How McKinley Gained "Control or
   Acquisition Over a RICO Enterprise."...............................................16

iii. Claim Two Does Not Allege an Injury to Amyntor Resulting
   from McKinley's Control or Acquisition of A RICO enterprise. .....................18

iv. Requisite Causation is Entirely Lacking. ...........................................18

D. Nothing in Amyntor's Derivative Claim Two Creates a Plausible
   Action Against McKinley Upon Which Relief Could be Granted. .................19

4. Claim Six – Conspiracy, 18 U.S.C. § 1962(d) ...............................................19

# Table of Authorities

**Cases** .................................................................................................. **Page**

*Accord Capone v. Castleton Commodities Int'l,* 2016 WL 1222163, at *5
(N.Y. Sup. Ct. Mar 29, 2016) ................................................................9

*Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988) 12,
15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ...................................... 8, 11, 13, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .......................................8, 11

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237 - 240,
109 S.Ct. 2893, 2899 - 2901 (1989) ......................................................14

*Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ..............................19

*In Re Toyota Motor Corp.,* 785 F. Supp. 2d 883, 921 (C.D. Cal. 2011) ................12

*James Lee Constr., Inc. v. GEICO.*, 2022 WL 19353 ................................................2

*Kearney v. Foley & Lardner, LLP*, 607 Fed.Appx. 757, 758
(N.D.Cal. 2021) .....................................................................................14

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993) .......... 12, 13

*McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) ..........................................7

*Meissner v. Yun*, 55 N.Y.S.3d 163, 163 (N.Y. App. Div. 2017) ..............................9

*MH Pillars Ltd. v. Realini*, 2018 WL 1184847, at *8
(N.D. Cal. Mar. 7, 2018) .......................................................................18

*Nutrition Distribution, LLC v. Custom Nutraceuticals, LLC*,
194 F.Supp.3d 952, 958 (D. Ariz. 2016) ........................................ 12, 15

*Nutrition Distribution, LLC*, 194 F.Supp.3d at 958 ................................................16

*Phillips Soil Prods., Inc. v. Heintz*, 2018 WL 2187442, at *4
(D. Or. May 11, 2018) ...........................................................................12

*Thompson v. City of Bozeman*, 2021 WL 1341823, *R&R adopted*,
  2021 WL 960698 (D. Mont. Mar. 15, 2021)........................................................7

*Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003) ............................12

## <u>Statutes</u> .................................................................. <u>Page</u>

18 U.S.C. § 1961 ..............................................................................................10

18 U.S.C. § 1961(1) ..........................................................................................15

18 U.S.C. § 1961(5) ..........................................................................................14

18 U.S.C § 1962(b) ....................................................................... 6, 8, 12, 13, 16

18 U.S.C. § 1962(d) ......................................................................................2, 19

## <u>Rules</u> ........................................................................ <u>Page</u>

Fed. R .Civ. P., Rule 8 ....................................................................................6, 7

Fed. R. Civ. P., Rule 12(b)(6) ..........................................................................6, 7

## <u>Other Authority</u>........................................................ <u>Page</u>

Black's Law Dictionary (11th ed. 2019)..............................................................17

COMES NOW, Defendant Nic McKinley ["McKinley"], with his Brief in Support of his Rule 12(b)(6) Motion to Dismiss and states as follows:

### PRELIMINARY STATEMENT

Plaintiffs initiated this lawsuit in February 2021 with a complaint asserting that the conduct of an alleged "Sexual Enterprise" caused their employer—a start-up security contracting outfit called Amyntor Group, LLC—to fail. Plaintiffs claimed this failure deprived them of hundreds of millions in future revenue and salaries from Amyntor. That complaint was defective in many respects. After the original defendants filed briefs describing why the complaint should be dismissed in June 2021, Plaintiffs abandoned their defenses and shifted to creating a new pleading—the First Amended Complaint (Doc. 51 – "FAC"). The FAC took Plaintiffs' case from bad to worse. Instead of describing why the "Sexual Enterprise" was a viable RICO claim with viable damages and proximate cause, Plaintiffs shifted to pressing *six different* RICO claims about a "Sexual Scheme" and added numerous defendants. One of those defendants is McKinley.

Upon review of the FAC, McKinley appears to have been an "afterthought" for Plaintiffs, who bring a narrow set of allegations about him regarding the alleged "trespass" into an Amyntor Group storage unit. From this narrow set of trespass allegations—and nothing relating to the "Sexual Scheme" at the heart of the pleading—Plaintiffs seek to hold McKinley liable for some unexplained

amount of the hundreds of millions of dollars they seek. But, as the FAC itself recognizes, McKinley is the "Founder and Executive Director for DeliverFund, an anti-sex trafficking non-profit organization" (FAC ¶ 44), and Plaintiffs' efforts to connect McKinley to the RICO conduct described in the FAC does not have "sufficient facts alleged to support a cognizable legal theory." *James Lee Constr., Inc. v. GEICO*., 2022 WL 19353, at *2 (D. Mont. Jan. 3, 2022) (Molloy, J., dismissing with prejudice) (emphases added).

Although the FAC is difficult to decipher as to the conduct alleged against any specific Defendant, it appears that McKinley is a named Defendant in Claim II (a derivative claim allegedly pressed by Amyntor Group, LLC[1]) and Claim VI (a RICO conspiracy claim under 18 U.S.C. § 1962(d)). As set forth below, these claims cannot stand as a matter of law—the facts alleged do not plausibly support the relief requested.

Moreover, as to the facts alleged relevant to McKinley regarding the Amyntor storage unit, Plaintiffs are operating from—and asking this Court to

---

[1] McKinley joins and adopts the argument raised by the Goguen Defendants that Amyntor Group. LLC is not capable of maintaining suit because it is a cancelled Delaware LLC that has not been re-instated or vested with power to sue by the Delaware Chancery Court. At the time the FAC was filed, Amyntor had been cancelled by the Delaware Secretary of State because, as the FAC's allegations and Marshall's real-world conduct make clear, the entity had been wound up and was defunct. *See* Goguen Defendants' Opening Brief (Dkt. 61 at 23 – 25).

adopt—a plainly implausible position: The FAC assumes that, somehow, Marshall had plenary power and control of Amyntor to the complete exclusion of its founding and sole financing member, Goguen (doing business through Amyntas Ventures, LLC). Plaintiffs' pervasive unwarranted assumption in the FAC is, accordingly, that because Goguen was the "non-managing" member he had no rights to see, touch, feel or otherwise involve himself at any level with Amyntor and that any attempt by him to concern himself with Amyntor's business was somehow an illegal RICO predicate act. In other words—as the statements during Marshall's recent criminal sentencing hearing corroborate—Marshall's message to Goguen was, in effect, "you supply money to Amyntor without question when I tell you, and in the amount that I tell you, but you have no right to ever question why I'm asking or what I'm doing with it because I'm Amyntor's managing member." No doubt that arrangement would surprise any number of passive or silent financial partners with equity interests in any business. Plaintiffs are not entitled to the presumption of "plausibility" on these claims which underlie the "trespass" allegations against McKinley. Because Plaintiffs cannot sustain their claims as a matter of law on the standing allegations, McKinley respectfully requests dismissal pursuant to Rule 12(b)(6).

## PLAINTIFFS' ASSERTED CLAIMS AGAINST MCKINLEY

### CLAIM TWO – AMYNTOR'S *DERIVATIVE* CLAIMS

As best McKinley can discern after sifting through 236 pages and 941 paragraphs in the FAC, Amyntor (not any individual Plaintiffs) *derivatively* through Marshall attempts to assert two separate RICO claims against McKinley.

First, Claim Two alleges that, somehow, McKinley "acquired and maintained an interest in and control of Amyntor" by acquiescing to a request from Amyntor's founding and financing member (Goguen) to enter an Amyntor storage facility, and that, somehow, by entering the storage facility McKinley took "unlawful control" over Amyntor's assets and affairs. FAC, ¶ 617(f). Nowhere in the FAC does Amyntor explain why its founding and financing member had no right to enter an Amyntor facility to see, feel, touch, or otherwise inspect Amyntor assets. Nowhere in the FAC does Amyntor allege that McKinley or any other Defendant acting at Goguen's request had any reason to believe that the founding and financing member of Amyntor had no right to allow them to enter an Amyntor storage facility—that is, to grant a "license" that would eliminate any potential for trespass as a matter of law. Although, the word "trespass" is used repeatedly in the FAC's conclusory allegations (FAC ¶¶ 222, 228, 236, 237, 239, 883) nowhere does Amyntor explain how entry into an Amyntor controlled facility by an

Amyntor member, or a representative acting with licensed permission and at the direction of an Amyntor member, could constitute trespass at law.

Second, Amyntor appears to allege in derivative Claim Two that Goguen purportedly provided McKinley with Amyntor private contracts and trade secrets with instructions to provide them to a journalist named Aram Rostam who purportedly then made them public. FAC ¶ 696. Critically, nowhere in the FAC do Plaintiffs ever attempt to explain what those "trade secrets" entailed at any level of specification. Neither do they provide any indication that Amyntor actually had "private contracts" with any third-party. Finally, nowhere do Plaintiffs allege that McKinley knew anything about "trade secrets" or "private contracts"; and nowhere do Plaintiffs allege that they were in any way damaged by McKinley's alleged actions, whether directly or through the alleged RICO activity. Amyntor merely claims that both Goguen and McKinley either knew or recklessly disregarded the possibility that their actions "***could*** injure Plaintiffs' reputation and business prospects."  FAC ¶ 698.[2]

---

[2] That speculative damage language is interesting in other respects as well. It is pleaded as speculative damages that *Plaintiffs* collectively *could potentially* suffer. It is *not* pleaded as a damage claim for Amyntor, the derivative *and only* Plaintiff named in Claim Two.

## CLAIM SIX – CONSPIRACY TO VIOLATE RICO

Claim Six is a general "conspiracy" claim asserted against all Defendants. Under well-established law, that claim fails if the underlying substantive RICO claims fail, and it also fails as to McKinley if Plaintiffs fail to plead sufficient facts against McKinley to show that he had any knowledge of the scheme and scope of the alleged "Sexual Scheme," or that he agreed to participate in it. The allegations in the FAC fail to make those connections as to McKinley.

### ARGUMENT

### 1. PREFACE.

The law relating both to applicable Rule 8 and Rule 12(b)(6), Fed. R. Civ. P., and relating to the pleading requirements of RICO (particularly 18 U.S.C § 1962(b) as  relevant to McKinley under Claim II) have been cited and briefed extensively. Accordingly, and to the extent possible, McKinley will attempt to avoid redundant briefing and will reiterate appropriate Rule 8, Rule 12(b)(6) and RICO substantive law only as it relates directly to the claims asserted against him. The Goguen Defendants' and the Rimerman/Valladao arguments (Doc. 61 & 69, respectively), are well taken and are adopted to the extent those arguments apply equally to the claims asserted against McKinley - Plaintiffs' Claim Two (Amyntor derivative claims) and Claim Six (RICO conspiracy claims).

2.    **PLAINTIFFS' FAC DOES NOT COMPLY WITH RULE 8, F.R.CIV.P.**

The Goguen Defendants' Brief (Doc. 61), adequately sets out the standards

and the applicable Rule 8 standards as they relate to all Defendants and need not be

extensively reiterated herein. As with all other Defendants, McKinley faces the

daunting task of attempting to separate the FAC's chaff from whatever wheat

contained therein that might somehow attach to him. That is not a task that Rule 8

contemplates. Dismissal is proper under Rule 8 where the "very prolixity of the

complaint ma[kes] it difficult to determine just what circumstances were supposed

to have given rise to the various causes of action." *McHenry v. Renne*, 84 F.3d

1172, 1178 (9th Cir. 1996). Likewise, as the Goguen Defendants argued, "[a]

district court has 'discretion to dismiss a complaint when an order requiring a more

definite statement … is violated and when the complaint fails to comply with

Rule 8." *Thompson v. City of Bozeman*, 2021 WL 1341823, at *4 (D. Mont. Feb.

19, 2021), *R&R adopted*, 2021 WL 960698 (D. Mont. Mar. 15, 2021)." (Doc. 61 at

16 – 17). Plaintiffs' confusing and disjointed 236 page, 941 paragraph, FAC is

clearly not a "short and plain statement" of their claims as required by Rule 8, Fed.

R. Civ. P., and, for this reason, the FAC should be dismissed with prejudice.

3.    **AMYNTOR'S DERIVATIVE CLAIM TWO SHOULD BE DISMISSED UNDER RULE 12(B)(6) STANDARDS**

In order to survive a Rule 12(b)(6) challenge, a plaintiff must plead a

cognizable legal theory and must allege "sufficient factual matter, accepted as true,

to 'state a claim to relief that is *plausible on its face*.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))

(emphasis added). Mere conclusory statements alleging possibilities or purely

speculative allegations are insufficient. *Twombly*, 550 U.S. at 555, *Iqbal*, 556 U.S.

at 678.

A.    ***Amyntor's Derivative Claim Two is a Not-So-Veiled Attempt to Improperly Disguise a State Law Claim as a RICO Claim Under 18 U.S.C. § 1962(b).***

At its core, Claim Two requires this Court to somehow rule that Amyntor

was improperly dissolved and that the winding up process was improperly done.

By way of example only, see among others, FAC ¶ 594 (Marshall was the

"managing member" of Amyntas and Amyntor when "Goguen sought to dissolve

these entities…"); FAC ¶ 599 ("Goguen sought to "dissolve" Amyntor in

September of 2018 in retaliation to and while bypassing the authority of Marshall

to wind up its affairs in a reasonable or orderly manner."); FAC ¶ 600 ("Into the

Spring and Summer of 2019, Defendants Valladao, Hegger and Goguen

commandeered the winding up process of Amyntor without coordinating their

actions with Marshall or seeking permission from Marshall as Managing

Member."); FAC ¶ 609 ("Goguen, after electing to "dissolve" the company in

September of 2018, thereafter, directed his attorneys and accountants to

commandeer the remaining assets of Amyntor by reclassifying them as "Two Bear

Security, LLC" assets or by allowing them to be siphoned off to certain individuals described herein."); FAC ¶ 614 ("Such assets could have been used to fund the winding-up of Amyntor's operations, including to pay for legal counsel to assist in such efforts…"); FAC ¶ 631 ("Defendants Goguen, and Hegger used their control over Two Bear Security and Amyntor to deprive Amyntor of its assets during its winding up process by claiming that certain assets, such as vehicles purchased and used by Amyntor employees and insured by Amyntor, belonged to Two Bear Security.")

The Claim Two allegations, as pleaded, purport to state a claim for wrongful dissolution and winding up of Amyntas and Amyntor. A crow with peacock feathers is still a crow. The Claim Two allegations do not state a RICO claim but rather purport to plead a state law claim disguised as a RICO claim that would be governed by Delaware corporate law and over which this Court would likely not have subject matter jurisdiction. *See Meissner v. Yun*, 55 N.Y.S.3d 163, 163 (N.Y. App. Div. 2017) (cited in Br. at 33), which establishes that a non-Delaware "***court should not rule on the existence or cancellation of a Delaware Corporate entity***." *Accord Capone v. Castleton Commodities Int'l,* 2016 WL 1222163, at *5 (N.Y. Sup. Ct. Mar 29, 2016). The process for dissolving Amyntor, whether it was followed, whether it comported with the terms of an operating agreement, and whether it complied with the mandates of Delaware corporate law are not issues

within the ambit of the RICO statute's specified set of predicate acts. *See* 18 U.S.C. § 1961 (enumerating predicates). Any fair reading of the FAC reveals that Plaintiffs are pressing standard corporate dispute claims under the guise of RICO.

### B. Plaintiffs' FAC, Generally, and Amyntor's Derivative Claim Two Specifically, are Replete with Conclusory, Speculative Allegations and Accordingly Do Not State Claims that are "Plausible on Their Face."

As Claim Two relates to McKinley, Amyntor pleads only that: 1) McKinley at the behest of Goguen, entered an Amyntor facility - FAC ¶ 222; FAC ¶ 794(d) ("aided and abetted" Goguen in "theft" of Amyntor assets), FAC ¶ 883 (entered an Amyntor facility at Goguen's direction and with his permission and removed Amyntor assets and trade secrets); and, 2) Goguen gave McKinley trade secrets and contract information with instructions to give those materials to a member of the media – FAC ¶ 44; FAC ¶ 696; FAC ¶ 794(e); FAC ¶ 883.

Nowhere in the FAC do Plaintiffs allege that any of McKinley's purported actions were predicate acts for purpose of Plaintiffs' RICO claims. Nowhere in the FAC do Plaintiffs explain how, or even if, McKinley was aware of the alleged "Goguen Sexual Scheme." Plaintiffs simply state generally and without elaboration that each Defendant was aware of Goguen's alleged sexual proclivities and helped to conceal them. There is no specific allegation that McKinley knew anything about Goguen's alleged misconduct, and there is no specific allegation that anything McKinley is accused of doing was done with the knowledge of Goguen's

alleged misconduct or with the intent to cover it up. Neither do Plaintiffs explain how, simply by reason of McKinley entering a storage facility at the direction of and with the permission of an Amyntor principal, and by allegedly accepting Amyntor "trade secrets" and "contract" information from an Amyntor principal, those acts could give rise to an inference of anything, let alone a fraudulent coverup of an illegal "Sexual Scheme." There are no allegations in the FAC that show a causal connection at any level to McKinley's alleged actions and the purported "association-in-fact" Plaintiffs scurrilously define as the Goguen Sexual Scheme. Finally, Plaintiffs allege no damage as a result of McKinley's alleged actions, but rather complain that those actions merely "***could*** injure Plaintiffs' reputation and business prospects." FAC ¶ 698.

The allegations pleaded against McKinley are convoluted, conclusory, speculative in the extreme, and are wholly insufficient to connect him to anything other than the fact that he knew Goguen and acted at his direction. The allegations clearly do not demonstrate a causal connection to the alleged Scheme - the "association-in-fact" at the heart of the RICO case. The allegations simply do not 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678-79. Mere conclusory statements alleging possibilities or purely speculative allegations are insufficient. *Twombly*, 550 U.S. at 555, *Iqbal*, 556 U.S. at 678.

**C.    Amyntor's Derivative Claim Two Does Not Meet the Substantive Allegations Required Under 18 U.S.C. § 1962(b) to State a Cognizable Claim Against McKinley.**

To state a claim against McKinley under 18 U.S.C. § 1962(b), the Plaintiff (Amyntor with respect to its derivative Claim Two) must sufficiently plead that "(1) [McKinley's] activity *led to [McKinley's] control or acquisition* over a RICO enterprise and (2) an injury to the plaintiff resulted from the [McKinley's] control or acquisition of a RICO enterprise." *Phillips Soil Prods., Inc. v. Heintz*, 2018 WL 2187442, at *4 (D. Or. May 11, 2018) (bracketed material and emphasis added) (citing *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003)). Plaintiffs must also sufficiently plead that McKinley "acquired or maintained an interest in or control of the enterprise through [his] predicate acts." *In Re Toyota Motor Corp.,* 785 F. Supp. 2d 883, 921 (C.D. Cal. 2011) (bracketed material added).

Plaintiffs must plead the purported predicate acts as if they were stand-alone claims. *Nutrition Distribution, LLC v. Custom Nutraceuticals, LLC*, 194 F.Supp.3d 952, 958 (D. Ariz. 2016) citing *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988). "[I]t is not enough for the plaintiff to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise," but "[r]ather, it must be established firmly that there is a nexus between the interest and the alleged racketeering activities." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993). A subsection 1962(b) claims fails

if the defendant's control over an enterprise was "legitimate" and not "the result of racketeering." *Id.* at 1191. Finally, Plaintiffs must sufficiently plead that they suffered "injury from [McKinley's] acquisition or control of an interest in the enterprise" that is "separate from an injury flowing from the racketeering activity itself." *Id*. (bracketed material added). Plaintiffs must plead each element with sufficient particularity and cannot simply rely on rote statements of the elements. *Iqbal*, 556 U.S. at 677 ("A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do. … Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement.") (internal citations omitted). Amyntor's derivative Section 1962(b) Claim Two asserted against McKinley fails all the relevant pleading tests.

### i.   MCKINLEY'S ACTIONS ARE NOT EXPRESSLY PLEADED AS "PREDICATE ACTS" AND EVEN IF ASSUMED TO BE ALLEGED "PREDICATE ACTS" THEY ARE NOT PLEADED WITH SUFFICIENT PARTICULARITY.

Amyntor's derivative Claim Two accuses McKinley of two acts that Plaintiffs classify as bad acts:

1.   McKinley entered an Amyntor facility at the direction and with the permission of Amyntor's founding and financing member and purportedly removed Amyntor assets.

2.   McKinley purportedly received Amyntor "trade secrets" and "contracts" from Goguen and purportedly at Goguen's direction gave them to a member of the media.

That's it.  Those acts are not expressly identified anywhere in the FAC as "predicate acts" as required to sustain a RICO claim.

Regardless, even giving Plaintiffs the benefit of the doubt, their pleadings are still deficient. To sustain a cognizable RICO claim plaintiffs must plead a "pattern of racketeering requiring at least two acts of racketeering." 18 U.S.C. § 1961(5). The mere existence of two "predicate acts" is not sufficient – the acts must be related and must "amount[ ] to, or threaten[ ] the likelihood of, continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237 - 240, 109 S.Ct. 2893, 2899 - 2901 (1989); *Kearney v. Foley & Lardner, LLP*, 607 Fed.Appx. 757, 758 (N.D.Cal. 2021) (unpublished).

Amyntor's derivative Claim Two lacks sufficient allegations to meet either the "relationship" requirement or the "continuity" requirement. There is no allegation that McKinley's act of entering an Amyntor storage facility and the alleged act of providing "trade secret" and "contract" materials to the media are at all related. Further, the acts do not meet, and there exists no allegation in the FAC, that claims they meet the "continuity" requirement. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement …*" *H.J. Inc*, 492 U.S. at 242 (emphasis added).

Here, Claim Two alleges only two acts, neither of which are expressly identified as "predicate acts" carried out in a short period of time without any evident connection between them. The FAC does not allege, as it must to survive a Rule 12(b)(6) motion, that there was any threat of future criminal conduct attached to either of the acts.

Finally, even if considered "predicate acts," the Claim Two allegations are insufficient. 18 U.S.C. § 1961(1) defines a series of state and federal criminal activities that fall within the definition of "racketeering activity." When pleading the involvement of a criminal act sufficient to fall within RICO's defined and required "racketeering activity" a plaintiff must plead the "predicate act" as if was a stand-alone claim. *Nutrition Distribution, LLC v. Custom Nutraceuticals, LLC*, 194 F.Supp.3d 952, 958 (D. Ariz. 2016) citing *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988).

Here, the FAC generally alleges "trespass" but does not set out the elements of a criminal trespass that would amount to a felony as required by 18 U.S.C. § 1961(1).[3] The FAC alleges assets were purportedly taken from the Amyntor storage facility, but neither identifies nor pleads the essential elements of whatever

---

[3] According to the FAC, law enforcement was involved with obtaining access to the storage facility. (FAC ¶ 233 - ¶ 234). If law enforcement believed that a felony occurred, one would surmise that a felony would have been charged.

the underlying felony might have been to qualify as a predicate act for RICO liability. The FAC also alleges that "trade secrets" and "contracts" were purportedly disseminated to the media, but fails to identify any underlying felony from those alleged activities and fails completely to plead any elements of the purported "predicate act." Those omissions are dispositive and are the death knell to Claim Two. "Because Plaintiff has failed to identify two or more instances in which [McKinley] violated a statute listed in § 1961(1), it has not adequately alleged a pattern of racketeering activity." *Nutrition Distribution, LLC*, 194 F.Supp.3d at 958.

### ii. CLAIM TWO FAILS TO ALLEGE HOW MCKINLEY GAINED "CONTROL OR ACQUISITION OVER A RICO ENTERPRISE."

In order to state a claim under 18 U.S.C. § 1962(b), Claim Two necessarily requires pleadings sufficient to demonstrate that McKinley acquired either control or acquisition of a RICO enterprise. Although, the FAC is less than clear as to what "RICO enterprise" McKinley purportedly acquired either control or acquisition of, the "enterprise" referenced is likely Amyntor. FAC ¶537 & FAC ¶ 593.[4] Further, although the FAC makes the conclusory allegation that McKinley and others were able to maintain their control and acquisition of Amyntor by theft or

---

[4] That assumption necessarily raises the question as to whether Amyntor, as the assumed "RICO enterprise," which one would assume purportedly shares a common purpose of carrying out the "Goguen Sexual Scheme" has standing to pursue its action as a derivative plaintiff.

misappropriation of Amyntor's assets, the FAC completely fails to explain how McKinley acquired control or acquisition. FAC ¶ 240. Black's Law Dictionary defines "control" as "[t]he direct or indirect power to govern the management and policies of a person or entity, whether through ownership of voting securities, by contract, or otherwise; the power or authority to manage, direct, or oversee." Black's Law Dictionary (11ᵗʰ ed. 2019). "Acquisition" is defined as "2. The gaining of possession or control over something; esp., the act of getting land, power, money, etc." *Id.* Other than a conclusory statement that "acquisition and control" happened, the FAC offers no further clarification. FAC ¶ 240. Plaintiffs allege in the FAC that McKinley acted at the behest and with permission of Goguen. Nothing in the FAC explains how McKinley's actions led to his obtaining any "control" of Amyntor. Neither does the FAC indicate that McKinley kept what he purportedly acquired (exactly what he acquired is also undefined), again allegedly at Goguen's direction and with his acquiescence. The FAC is mute with respect to how any Defendant other than Goguen had "control," legitimate or otherwise, over Amyntor; it is absolutely silent for McKinley and the Goguen Trust. Without more, the FAC simply does not plead plausible facts that McKinley acted in any manner other than by permission and direction from Amyntor's founder and financier.

### iii. CLAIM TWO DOES NOT ALLEGE AN INJURY TO AMYNTOR RESULTING FROM MCKINLEY'S CONTROL OR ACQUISITION OF A RICO ENTERPRISE.

Plaintiffs "must allege an injury from the defendant's acquisition or control of an interest in a RICO enterprise *separate from an injury flowing from the racketeering activity itself*," and dismissal follows where plaintiffs "have not alleged any injury *other than the alleged economic loss flowing from the racketeering activity*." *MH Pillars Ltd. v. Realini*, 2018 WL 1184847, at *8 (N.D. Cal. Mar. 7, 2018) (emphasis added). Claim Two fails entirely to meet this pleading requirement.

Claim Two contains no allegations explaining how the purported injuries to Amyntor are distinct from injuries arising directly from the purported predicate acts. In fact, with respect to the claims relating to dissemination of "trade secrets" and "contract" information, the FAC alleges no damage at all, only the possibility that damage could result. FAC ¶ 698. All of the alleged damages asserted arise directly from the predicate acts, and thus are not distinct. *See also,* Doc 61 at 22 – 23 (Goguen Defendants' Brief).

### iv. REQUISITE CAUSATION IS ENTIRELY LACKING.

McKinley is at a loss to even address how his alleged actions connect to any RICO damages relating to Plaintiffs' alleged Scheme. In fact, Claim Two does not even attempt to link McKinley's actions to any alleged RICO damages derived

from the purported Scheme. Causation at any level is not only lacking in fact, it is simply not pleaded in the FAC.

     **D.**    ***Nothing in Amyntor's Derivative Claim Two Creates a Plausible Action Against McKinley Upon Which Relief Could be Granted.***

Derivative Claim Two fails in its entirety to state a cognizable legal theory and fails to implicate McKinley with "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678-79. Amyntor's Derivative Claim Two should be dismissed in its entirety and with prejudice, never to be brought again.

**4.**    **CLAIM SIX – CONSPIRACY, 18 U.S.C. § 1962(D)**

"Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Plaintiffs failed to plead a substantive violation of RICO and accordingly their conspiracy claims fail as to all Defendants, including McKinley.

<u>CONCLUSION</u>

Plaintiffs' action against McKinley stated in Derivative Claim Two and Claim Six should be dismissed in their entirety and with prejudice, never to be brought again.

## CERTIFICATE OF COMPLIANCE
### L.R. 7.1(d)(2)(E)

Pursuant to L.R. 7.1(d)(2)(E), the undersigned certifies that the body of this

Brief contains 4427 words calculated by Microsoft Word's word count.

DATED this 9th day of March, 2022.

ROCKY MOUNTAIN LAW PARTNERS, P.C.

/S/     *Bruce A. Fredrickson*
          Attorneys for Defendant, Nic McKinley